UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| LAURALEE SHANNON HIATT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:15-cv-00388-JMS-MJD |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Lauralee Shannon Hiatt ("Hiatt") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends the decision of the Commissioner be **AFFIRMED**.

### I.  Background

Hiatt filed her application for SSI on July 3, 2008, alleging January 1, 2006 as the onset date of her disability. [R. at 10.] In her disability report filed in conjunction with her application, Hiatt listed COPD, L1-L5 blown disc, chronic bronchitis, asthma, emphysema, depression, anxiety, and sleep apnea as her disabling impairments.[1] [R. at 148.] Hiatt's application was denied initially on October 14, 2008 and upon reconsideration on April 15, 2009. [R. at 10.] Hiatt timely requested a hearing on her application, which was held before Administrative Law Judge Angela

---

[1] Hiatt recited the relevant factual and medical background in her opening brief. [*See* Dkt. 22.] The Commissioner, unless otherwise noted herein, does not dispute these facts. [*See* Dkt. 27.] Because these facts involve Hiatt's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs and articulate specific facts as needed below.

1

Miranda on June 3, 2010. [R. at 26.] The ALJ issued her decision on July 23, 2010, denying Hiatt's application for SSI, [R. at 7,] and on July 22, 2011 the Appeals Council denied Hiatt's request for review. [R. at 1.]

Hiatt filed a complaint with the United States District Court for the Southern District of Indiana on November 1, 2011. [R. at 825.] The Court issued an order on March 29, 2013 reversing the Commissioner's decision and remanding the case for further proceedings. [R. at 826-44.] The Court found the ALJ did not properly analyze whether Hiatt's spinal impairments satisfied Listing 1.04 and did not properly analyze the opinion of Hiatt's treating physician that she was unable to work. [*Id.*] On remand, a hearing was held before a new Administrative Law Judge Romona Scales ("ALJ"), on March 18, 2014. [R. at 794.] On April 25, 2014, the ALJ issued her decision denying Hiatt's application for SSI, [R. at 768], and on October 5, 2015, the Appeals Counsel denied Hiatt's request for review. [R. at 754.] Hiatt timely filed her Complaint with this Court on November 17, 2015, which Complaint is now before the Court.

## II.     Legal Standard

To be eligible for SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the

claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three and either cannot perform her past relevant work or has no past relevant work but she can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work-related activities. S.S.R. 96-8p.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of

evidence or testimony," she must "provide some glimpse into her reasoning" and "build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

### III.   The ALJ's Decision

In her decision, the ALJ first determined Hiatt has not engaged in substantial gainful activity since July 3, 2008. [R. at 773.] At step two, the ALJ found Hiatt's asthma and chronic obstructive pulmonary disease, peripheral joint osteoarthritis, degenerative changes to the cervical and lumbar spine status-post lumbar spine surgical intervention, attention-deficit hyperactivity disorder, histrionic personality disorder, major depressive disorder, and generalized anxiety disorder to be severe impairments, as defined by the Act, because they had a more than minimal effect on Hiatt's ability to do basic work activities. [*Id.*] However, at step three the ALJ found Hiatt did not have an impairment that meets or medically equals a Listing by evaluating Listing 1.02 for her multi-joint osteoarthritis, Listing 1.04 for her spinal impairments, Listings 3.02 and 3.03 for her respiratory impairments, and Listings 12.02, 12.04, 12.06, and 12.08 for her mental impairments. [R. at 776-78.]

At step three but before step four, the ALJ, after "careful consideration of the entire record," determined Hiatt had the RFC to perform sedentary work as defined in 20 CFR 416.967(a) with the following additional limitations:

> [W]ork requiring no more than occasional balancing, stooping, and climbing of ramps and stairs, no kneeling, crouching, crawling, and climbing of ladders, ropes, and scaffolds, no more than occasional overhead reaching bilaterally, which avoids concentrated exposure to extreme temperatures, wetness, humidity, and vibration, which requires no exposure to hazards including moving machinery and unprotected heights or slippery, wet, uneven surfaces, and which permits alternation of sitting and standing up to five minutes of every hour. Additionally, the claimant can understand, remember, and carry-out simple, routine tasks, can maintain adequate attention and concentration for those tasks, can interact appropriately with supervisors, occasionally and superficially with co-workers and the general public, and could manage the changes associated with a routine work-setting, but would also be limited to work free of fast-paced production and quota.

[R. at 778.] The ALJ found at step four that Hiatt has no past relevant work. [R. at 786.] However, considering Hiatt's age, education, work experience, and RFC, the ALJ found at step five there were jobs that existed in significant numbers that Hiatt could perform. [R. at 786-87.] Specifically, the ALJ found Hiatt was able to perform work as an assembler, product stuffer, and garment assembler. [R. at 787.] Based on these findings, the ALJ concluded Hiatt is not disabled, as defined by the Social Security Act. [*Id*.]

### IV.   Discussion

On appeal, Hiatt argues the ALJ erred in three ways. First, she argues the ALJ incorrectly concluded that her spinal impairments do not satisfy Listing 1.04. Next, she argues the ALJ improperly analyzed the opinion of her treating physician. Finally, she argues the ALJ erred in her analysis of Hiatt's mental impairments.

#### A.  Listing 1.04

Hiatt first argues the ALJ's denial decision was in error because substantial evidence does not support the ALJ's finding that Hiatt does not meet or medically equal Listing 1.04 (Disorders of the Spine). Listing 1.04 provides as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> . . .

> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1. Hiatt alleges her spinal impairments satisfy Listings 1.04(A) and 1.04(C). Hiatt "has the burden to present medical findings that match or equal in severity all the criteria specified by a listing." *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) (citing *Sullivan v. Zebley,* 493 U.S. 521, 531 (1990)). The Court finds the ALJ's determination that Hiatt's spinal impairments do not satisfy Listing 1.04 is supported by substantial evidence.

In order to satisfy Listing 1.04(A), Hiatt must show her spinal injury results in "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The ALJ noted Hiatt's extremities strength was repeatedly found to be adequate [R. at 776] and a medical consultative examiner found Hiatt had a full range of motion at the spine, normal motor and sensory function, and normal fine and gross motor movements. [R. at 781 (citing R. at 393).] Hiatt does not cite to any evidence in the record to indicate her spinal impairments cause motor loss, reflex loss, or muscle weakness. Accordingly, Hiatt has not met her burden to show she satisfies Listing 1.04(A).

Next, in order to satisfy Listing 1.04(C), Hiatt must show her spinal impairments "result in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Listing 1.00(B)(2)(b) defines an inability to ambulate effectively as an "extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." The ALJ acknowledged there are occasional notations in Hiatt's medical records suggesting she had difficulty walking, but noted the vast majority of the medical records reported Hiatt's gait was "normal or unremarkable." [*See e.g.*, R. at 300, 393, 426, & 433.] When there is conflicting evidence in the record, it is the job of

the ALJ to weigh the evidence and make a determination. *Gaylor v. Astrue*, 292 F. App'x 506, 512 (7th Cir. 2008) ("It is the ALJ's responsibility to weigh conflicting evidence and make a determination on disability"). Since there is substantial evidence to support the ALJ's determination that Hiatt does not have an "extreme limitation of the ability to walk," the ALJ did not err by finding Hiatt's impairments do not satisfy Listing 1.04(C).

Finally, the ALJ's determination that Hiatt's impairments do not satisfy Listing 1.04 is supported by the medical opinion of Dr. Richard Hutson ("Dr. Hutson,") a specialist in orthopedic surgery. [R. at 882.] After reviewing Hiatt's medical records, Dr. Hutson opined at the hearing that Hiatt's spinal impairments do not satisfy Listing 1.04 because she does not have the appropriate loss of neuro anatomic function. [R. at 814.] Hiatt did not submit an expert medical opinion to contradict Dr. Hutson's opinion.[2] *See Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988). Thus, the ALJ was justified in relying upon Dr. Hutson's uncontradicted medical opinion that Hiatt's impairments do not satisfy Listing 1.04. *Id.*

In sum, the ALJ supported her determination that Hiatt's spinal impairments do not satisfy Listing 1.04 with substantial evidence. The ALJ cited to Hiatt's medical records, which indicated she did not suffer any motor loss or muscle weakening, and indicated she generally had a "normal or unremarkable" gait. Furthermore, Dr. Hutson's uncontradicted medical opinion supports the ALJ's determination that Hiatt's impairments do not satisfy Listing 1.04. Thus, the Court finds the ALJ did not err in finding Hiatt's spinal impairments do not satisfy Listing 1.04.

### B. Treating Physician

Next, Hiatt argues the ALJ did not provide substantial evidence to support her decision to give little weight to the opinion of Hiatt's treating physician, Dr. Robert Chua ("Dr. Chua"). When

---

[2] As noted below, Hiatt's treating physician did opine that Hiatt was unable to work because of her disabilities. However, he never opined that Hiatt's spinal impairments satisfied Listing 1.04. [R. at 419, 737.]

analyzing the proper weight to give to the opinion of a treating physician, the ALJ must first determine whether the opinion is entitled to controlling weight. The ALJ must give a treating physician's opinion controlling weight if it is both "(1) supported by medical findings; and (2) consistent with substantial evidence in the record." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (citing 20 C.F.R. § 404.1527(c)(2)). If the ALJ finds the treating physician is not entitled to controlling weight, she must then determine how much weight the opinion is due. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). When determining the proper weight to give the opinion of a treating physician, an ALJ must consider several factors, including: 1) the length, nature, and extent of the treatment relationship, 2) the frequency of examination, 3) the types of tests performed, 4) whether the physician supported her or her opinions with sufficient explanations, and 5) whether the physician specializes in the medical conditions at issue. *Id.*; 20 C.F.R. § 404.1527. If the ALJ "discounts the physician's opinion after considering these factors," a reviewing court "must allow that decision to stand so long as the ALJ minimally articulated her reasons" for doing so. *Elder*, 529 F.3d at 415 (internal quotations marks and alteration omitted).

Dr. Chua opined Hiatt was "disabled" and was "totally unable to work" due to a permanent condition. [R. at 419, 737.] Additionally, Dr. Chua opined Hiatt was unable to sit, stand, walk, or lift for more than a short period of time and was completely unable to push/pull or bend. [R. at 737.] The ALJ gave Dr. Chua's opinion "little weight." [R. at 785.] Hiatt argues the ALJ should have given greater weight to Dr. Chua's opinion because Dr. Chua frequently examined Hiatt and because Dr. Chua's opinion was supported by objective medical evidence and the opinions of other medical providers. The Court disagrees.

As an initial matter, whether a claimant is disabled and therefore unable to work is a non-medical determination that is reserved solely for the Commissioner. 20 C.F.R. § 404.1527(d)(1).

Accordingly, Dr. Chua's opinion that Hiatt was "disabled" and "completely unable to work" was "entitled to no weight, even coming from a treating physician." *Spies v. Colvin*, No. 15-2578, 2016 WL 2641813, at *9 (7th Cir. May 5, 2016). Thus, the ALJ's decision to give Dr. Chua's opinion that Hiatt is disabled little weight is sustainable on this ground alone.

Moreover, the ALJ provided sufficient additional reasons for giving Dr. Chua's opinion little weight. Hiatt's primary argument is that the ALJ should have given Dr. Chua's opinion greater weight because he treated Hiatt over thirty times in the three years prior to rendering his opinion. While the frequency of a treating physician's examination of a claimant is a relevant consideration when determining the weight to give a treating physician's opinion, it is not the only factor to consider. *See* 20 C.F.R. § 404.1527. The ALJ discounted Dr. Chua's opinions because they were conclusory and concerned a determination that was reserved for the Commissioner. *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) ("the ALJ did not have to accept [the treating physicians'] conclusory statement that [the claimant] could not work.") Moreover, the ALJ found Dr. Chua's opined limitations for Hiatt were "wildly excessive" in light of the objective evidence noted above that Hiatt could ambulate effectively and did not suffer any motor loss. Finally, the ALJ noted Dr. Hutson opined that the objective medical evidence does not support the degree of limitations opined by Dr. Chua. [R. at 816.] All of these factors are relevant when determining the proper weight to give a treating physician's opinion. Whether the frequency of Dr. Chua's treatment of Hiatt outweighs these other considerations was a decision for the ALJ to make, and the Court declines to reweigh the evidence in Hiatt's favor.

Next, Hiatt argues Dr. Chua's opinions were supported by objective medical evidence and the opinions of other medical providers. However, this argument misses the mark. While it is true the objective evidence and the opinions of other medical providers supported Dr. Chua's assertion

that Hiatt has **spinal impairments**, this is a distinct issue from Hiatt's functional limitations and whether Hiatt is disabled as defined in the social security act. The objective evidence and the opinions of other medical providers do not support Dr. Chua's opinion that Hiatt is **completely unable to work**. Rather, as mentioned above, there is objective evidence that contradicts Dr. Chua's opinion, and Dr. Hutson specifically rejected Dr. Chua's opined restrictions. Accordingly, the ALJ was entitled to view the evidence as a whole and give little weight to Dr. Chua's opinion.

### C. Mental Impairments

Finally, Hiatt argues the ALJ "improperly evaluated the severity of Plaintiff's mental impairments as they had progressed since last claim." [Dkt. 22 at 13.] Hiatt's argument on this point is very brief and underdeveloped. [*Id.*] Moreover, Hiatt did not respond in her reply brief to the Commissioner's assertion that this argument should be considered waived. [Dkt. 28.] Nevertheless, the Court finds Hiatt does raise one very narrow challenge to the ALJ's consideration of her mental impairments. Specifically, Hiatt claims the ALJ incorrectly stated that only psychological treatment notes prior to Hiatt's alleged onset of disability indicated she was "agitated." The Court concludes the error was harmless.

While examining Hiatt's mental impairments, the ALJ noted "[w]hile it is true that Dr. Singh's treatment notes indicate signs of agitation on the part of the claimant, it is also true that those signs predate the claimant's alleged onset date." [R. at 784.] Hiatt is correct that treatment notes on September 28, 2011 and May 26, 2011, long after the alleged onset date of January 1, 2006, also indicate she was "agitated." [R. at 1174, 1175.] However, the Court does not find this one misstatement to be significant. The ALJ engaged in a thorough analysis of Hiatt's mental impairments, including the evidence of Hiatt's "agitation." [R. at 776-78, 783-85.] After considering the entire record, the ALJ concluded "though [Hiatt] does report intermittent

10

symptoms associated with her mental impairments, particularly feelings of anxiety and panic, [she] nevertheless remains able to sustain attention, interact with treating professionals, and interact with the general public." [R. at 784.] The ALJ thus acknowledged Hiatt's "agitation" when determining Hiatt's mental RFC. Since the ALJ considered all the relevant evidence when analyzing Hiatt's mental impairments, it is highly unlikely the correction of this one misstatement would change the ALJ's decision. Therefore, the ALJ's error was harmless. *See Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013) (an error is harmless if the court "cannot see how a different conclusion possibly could be reached on remand.")

## V.   Conclusion

For the aforementioned reasons, the Magistrate Judge recommends the decision of the Commissioner be **AFFIRMED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:  09 JUN 2016

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Thomas C. Newlin
FLESCHNER STARK TANOOS & NEWLIN
tom@fleschnerlaw.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov